UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
"IN ADMIRALTY"

MARK E. LUTHER, PH.D.,

    Plaintiff,

vs.                              Case Number: 8:09 CV 2267-T 26 TGW

M/V OURO DO BRASIL, Official
Number 9832, her engines,
tackle, appurtenances, spares and
equipment appertaining whether
onboard or not, *in rem*, FISCHER
GROUP, a Brazilian corporation,
*in personam*, and PROMENADE
SHIPPING, a Liberian corporation,
*in personam*,

    Defendants.
_____/

## VERIFIED COMPLAINT

The Plaintiff, MARK E. LUTHER, PH.D. ("Luther"), by and through undersigned counsel hereby submits its Verified Complaint against Defendant Motor (Tanker) Vessel OURO DO BRASIL, Official Number 9832, her engines, tackle, appurtenances, spares and equipment appertaining whether onboard or not ("Offending Vessel"), *in rem* and FISCHER GROUP, a Brazilian corporation ("Beneficial Owner"), *in personam*, and PROMENADE SHIPPING, a Liberian corporation ("Record Owner"), *in personam*, and allege as follows:

1. This is a maritime tort action for personal injuries sustained by Plaintiff as a result of the negligent operation of the Offending Vessel with damages in excess of Seventy-Five Thousand Dollars ($75,000.00).

2. This action gives rise to a maritime lien against the Offending Vessel, pursuant to 46 U.S.C. § 31301(5)(B).

3. This is also an action for negligence under the general maritime laws of the United States against the Beneficial Owner of the Offending Vessel.

Moore & Company, P.A., 355 Alhambra Circle, Suite 1100, Miami (Coral Gables), FL 33134

4. This Court has subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1332.

5. At all material times, the Offending Vessel was and is a Liberian flagged tanker vessel with Official Number: 9832; IMO Registered Owner No. 5042292, MMSI No. 636009832, Call Sign ELPP9, doing business within the United States, and more particularly, within the State of Florida.

6. At all material times, Beneficial Owner was and is a limited liability company organized under the laws of Brazil and is the beneficial owner and operator of the Offending Vessel, with its principal place of business in Brazil and doing business within the State of Florida.

7. At all material times, Record Owner, was and is a company organized under the laws of Liberia, with its principal place of business in Liberia and doing business within the State of Florida and at all material times was the record owner of the Offending Vessel.

8. Luther was and is a citizen of the state of Florida, who was injured by the Offending Vessel.

9. Venue is proper in the Middle District of Florida as a substantial part of the events or omissions giving rise to the claim occurred and/or a substantial part of property that is the subject of the action is situated here.

## BACKGROUND FACTS

10. Luther re-alleges and incorporates all allegations contained in Paragraphs 1-9 of the Complaint as if fully set forth herein.

11. Under the pilings under the Sunshine Skyway Bridge are cylinder-like structures ("Dolphins") with concrete tops. Their main purpose is to deflect any ship, which might allide and impact the Bridge.

12. A radio tower and electronic equipment are located on top of the North East Dolphin. The electronics measure underwater currents and other data.

13. As of Monday, August 31, 2009, the current meter, on the North East Dolphin, had stopped transmitting data.

14. On Monday, August 31, 2009, at 7:29 AM EST, Luther sent notice to the appropriate agencies, the U.S. Coast Guard and the Tampa Bay Pilot's Association, declaring that he and his assistants, Heather Havens and Jeff Scudder, would be travelling to, and tie-up their vessel on, the NE "Dolphin" of the Sunshine Skyway Bridge in order to repair and monitor the Physical Oceanographic Real Time System (P.O.R.T.S) which is located on the North East Dolphin structure.

15. Thereafter, Luther and his assistants took his 28-foot vessel "The Three Graces" (the "Vessel") into Tampa Bay and proceeded directly to the North East Dolphin.

16. The Vessel is maintained properly, and is and was seaworthy.

17. The Vessel flies an orange and blue colored Department of Transportation flag marked with "D765", as well as a white banner that states "Tampa Bay P.O.R.T.S.".

18. By 10:30 am EST, Luther and his assistants arrived at the subject North East Dolphin.

19. The weather was clear, the sun was up, there was no rain or fog, and no other boats were in the immediate area.

20. Dr. Luther and his team tied up and properly moored the Vessel along the south side of the Dolphin, securing the Vessel with mooring lines to the wooden strips covering the Dolphin. The Vessel was moored pointing toward the North West between the NE Dolphin and rock pilings which support the Sunshine Skyway Bridge.

21. The Vessel was so moored in a way specifically designed to resist any ordinary and normal swells from the center of the channel, where boat traffic may be anticipated.

Moore & Company, P.A., 355 Alhambra Circle, Suite 1100, Miami (Coral Gables), FL 33134

22. Luther and his assistant, Jeff Scudder ("Scudder") used a boarding ladder to reach from the upper deck of the Vessel to the top of the Dolphin where the electronic equipment is located.

23. On or about 11:40 am EDT, the team completed their work and Luther began to descend from the North East Dolphin onto the upper deck of the Vessel.

24. As he descended the ladder, Luther noticed a large freighter ship coming inbound.

25. USCG did not provide Luther or his team with any e.t.a. for the vessel, or warning of any kind of the arrival, position, speed, or possible wake of the Offending Vessel.

26. Upon information and belief, the Offending Vessel came from the West and headed East through the center span of the bridge.

27. Upon information and belief, the Offending Vessel was displacing a significant amount of water because it was fully laden with orange juice from Brazil.

28. Upon information and belief, the Offending Vessel was also travelling at a speed of at least 15 knots.

29. On or about 11:45 am EDT, the Offending Vessel passed through the center span of the bridge.

30. The starboard side of the Vessel facing the North East Dolphin was lined with a string of special fenders which could absorb the energy of any normal wake which might jostle the Vessel.

31. Upon information and belief, the waves created by the wake of the Offending Vessel were far larger than normal – between five (5) and ten (10) feet tall.

32. When the wake from the offending Vessel hit Luther's Vessel, the force of the impact slammed the vessel into the Dolphin with enough force to flatten the protective fenders and to break the lines holding the fenders to the Vessel.

33. As the boat then rocked away from the Dolphin, Luther was thrown from port to starboard side of the upper deck of the Vessel.

34. The Vessel was so powerfully rocked that Luther was thrown from the upper deck of the Vessel toward the Dolphin, was crushed between the Vessel and the Dolphin by the wave action created by the Offending Vessel, and he then fell into the water between the Vessel and the Dolphin.

35. Luther was submerged several feet below the water surface but managed to struggle back to the surface, gasping for air, and called to his crew for help.

36. Havens, seeing Luther's blood in the water, and hearing his screams, jumped into the water and grabbed him by the belt to keep his head above the water.

37. Luther's assistant, Scudder, pushed the Vessel away from the Dolphin and away from Luther who was now profusely bleeding in the water between the Vessel and the Dolphin.

38. When Luther was crushed he lost the use of his left arm. Havens was not strong enough to lift Luther from the water back into the Vessel so Luther remained in the Water until Scudder was able to climb down from the Dolphin to help.

39. Scudder and Havens pulled Luther on to the Vessel's swim platform.

40. Havens called 911 from Scudder's mobile phone.

41. Havens held Luther and assessed his injuries which included difficulty breathing, blood soaking the shirt under Luther's left arm, a 3' gaping wound under Luther's left arm, and a puncture wound with exposed muscle and tissue. She applied pressure to the site of the arm wound to contain the bleeding.

42. After it went through the bridge, the Freighter turned East towards Port Manatee.

43. In response to Haven's 911 call, at approximately 12:15 pm EDT, Eckerd College Search and Rescue arrived on the scene.

44. A St. Petersburg Fire-Rescue boat arrived shortly thereafter and transported Luther to shore where he was taken by ambulance to Bayfront Medical Center with multiple, life-threatening injuries.

45. Luther was then admitted to Bay Front Medical Center, where his injuries, including multiple fractures to the left scapula, left hemopneumothorax, right pneumothorax, multiple compound rib fractures on his left side, including flail chest, multiple rib fractures on his right side, damage to chest muscles, severed left axillary artery, and torn left brachial plexus nerve bundle, were treated.

46. On or about August 31, 009, surgery was performed on Luther's axillary artery, wherein a vein taken from his left thigh was used to repair the damaged axillary artery.

47. On or about September 09, 2009, surgery performed to relieve fluid in Luther's chest wall to aid respiration.

## COUNT I
## NEGLIGENCE AGAINST FISCHER GROUP

48. Luther re-alleges and incorporates by reference the allegations set forth in all previous paragraphs, as if fully set forth herein.

49. This is a maritime tort action for personal injuries sustained by Luther while he was working near the North East Dolphin.

50. Beneficial Owner had a duty to appreciate the reasonable effect of her own speed and motion through the water at the particular place and under the particular circumstances where the injury occurred.

51. Beneficial Owner was required to take all reasonable precautions to avoid injury.

52. Beneficial Owner breached its duties to Luther, by failing to exercise reasonable care to avoid causing injuries to Luther and by failing to do any one or more of the following:

    (a) ensure that the Offending Vessel did not exceed safe speeds;

    (b) ensure that the Offending Vessel was not over-laden with cargo such that it's navigation would present a safety hazard to other boaters;

    (b) warn Luther of the impending large wake being produced by the Offending Vessel;

(c) take suitable precautions to protect Luther under the circumstances and/or warn Luther of the unsafe and dangerous conditions then existing, of which Beneficial Owner had actual and/or constructive notice.

53. As a direct and proximate result of Beneficial Owner's failure to exercise reasonable care under the circumstances and/or warn of dangers of which Beneficial Owner knew or should have known, Luther sustained damages including, but not limited to the permanent loss of use of his left arm, severe pain and suffering, and emotional distress.

54. As a further direct and proximate result of Beneficial Owner's actions and/or failures to act, Luther has and will continue to suffer mental anguish and has suffered losses including, but not limited to medical expenses, pain and suffering, loss of income, and loss of enjoyment of a normal life. The losses suffered by Luther are all permanent and continuing in nature.

WHEREFORE, Plaintiff, MARK E. LUTHER, PH.D., demands judgment against the Defendant, FISCHER GROUP, for damages in an amount exceeding $4,859,280.00 (with such claim amount potentially amended prior to trial due to facts discovered during the discovery process), plus attorney fees, costs, and such further and additional relief as the Court may deem just and appropriate under the circumstances.

## COUNT II
## NEGLIGENCE AGAINST PROMENADE SHIPPING

55. Luther re-alleges and incorporates by reference the allegations set forth in all previous paragraphs, as if fully set forth herein.

56. This is a maritime tort action for personal injuries sustained by Luther while he was working near the NE Dolphin.

57. Beneficial Owner had a duty to appreciate the reasonable effect of her own speed and motion through the water at the particular place and under the particular circumstances where the injury occurred.

7

58.  Beneficial Owner was required to take all reasonable precautions to avoid injury.

59.  Beneficial Owner breached its duties to Luther, by failing to exercise reasonable care to avoid causing injuries to Luther and by failing to do any one or more of the following:

- (c) ensure that the Offending Vessel did not exceed safe speeds;

- (d) ensure that the Offending Vessel was not over-laden with cargo such that it's navigation would present a safety hazard to other boaters;

- (b) warn Luther of the impending large wake being produced by the Offending Vessel;

- (c) take suitable precautions to protect Luther under the circumstances and/or warn Luther of the unsafe and dangerous conditions then existing, of which Beneficial Owner had actual and/or constructive notice.

60.  As a direct and proximate result of Beneficial Owner's failure to exercise reasonable care under the circumstances and/or warn of dangers of which Beneficial Owner knew or should have known, Luther sustained damages including, but not limited to the permanent loss of use of his left arm, severe pain and suffering, and emotional distress.

61.  As a further direct and proximate result of Beneficial Owner's actions and/or failures to act, Luther has and will continue to suffer mental anguish and has suffered losses including, but not limited to medical expenses, pain and suffering, loss of income, and loss of enjoyment of a normal life. The losses suffered by Luther are all permanent and continuing in nature.

WHEREFORE, Plaintiff, MARK E. LUTHER, PH.D., demands judgment against the Defendant, PROMINADE SHIPPING, for damages, in an amount exceeding $4,859,280.00 (with such claim amount potentially amended prior to trial due to facts discovered during the discovery process), plus attorney fees, costs, and such further and additional relief as the Court may deem just and appropriate under the circumstances.

## COUNT III
### NEGLIGENCE AGAINST THE T/V OURO DO BRASIL, *in rem*

Moore & Company, P.A., 355 Alhambra Circle, Suite 1100, Miami (Coral Gables), FL 33134

62. Luther re-alleges and incorporates by reference the allegations set forth in all previous paragraphs, as if fully set forth herein.

63. This is a maritime tort action for personal injuries sustained by Luther while he was working near the NE Dolphin.

64. Beneficial Owner had a duty to appreciate the reasonable effect of her own speed and motion through the water at the particular place and under the particular circumstances where the injury occurred.

65. Beneficial Owner was required to take all reasonable precautions to avoid injury.

66. Beneficial Owner breached its duties to Luther, by failing to exercise reasonable care to avoid causing injuries to Luther and by failing to do any one or more of the following:

(e) ensure that the Offending Vessel did not exceed safe speeds;

(f) ensure that the Offending Vessel was not over-laden with cargo such that it's navigation would present a safety hazard to other boaters;

(b) warn Luther of the impending large wake being produced by the Offending Vessel;

(c) take suitable precautions to protect Luther under the circumstances and/or warn Luther of the unsafe and dangerous conditions then existing, of which Beneficial Owner had actual and/or constructive notice.

67. As a direct and proximate result of Beneficial Owner's failure to exercise reasonable care under the circumstances and/or warn of dangers of which Beneficial Owner knew or should have known, Luther sustained damages including, but not limited to the permanent loss of use of his left arm, severe pain and suffering, and emotional distress.

68. As a further direct and proximate result of Beneficial Owner's actions and/or failures to act, Luther has and will continue to suffer mental anguish and has suffered losses including,

but not limited to medical expenses, pain and suffering, loss of income, and loss of enjoyment of a normal life. The losses suffered by Luther are all permanent and continuing in nature.

WHEREFORE, Plaintiff, MARK E. LUTHER, PH.D., demands judgment against the Defendant, FISCHER GROUP, for damages in an amount exceeding $4,859,280.00 (with such claim amount potentially amended prior to trial due to facts discovered during the discovery process), plus attorney fees, costs, and such further and additional relief as the Court may deem just and appropriate under the circumstances.

    a. That process, in due form and according to the rules and practices of this Court in a cause of admiralty and maritime jurisdiction, be issued against the Vessel, authorizing the *in rem* arrest and seizure of said vessel.

    b. That all persons claiming any right, title, and interest in said vessel be summoned to appear and answer under oath, all in the singular, the matters aforesaid and that said vessel be condemned and sold to pay the demands as aforesaid, with costs, attorneys' fees, and interest;

    c. That judgment be entered in favor of Plaintiff, MARK E. LUTHER, PH.D., against the Offending Vessel, *in rem*, in an amount exceeding $4,859,280.00 (with such claim amount potentially amended prior to trial due to facts discovered during the discovery process), plus interest, attorneys' fees and costs, together with all such losses permitted by law; and

    d. For any other relief which justice requires or may be deemed appropriate by this Court.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of any issue triable of right by a jury.

Dated: November 6, 2009                          Respectfully submitted,

                                                       **MOORE & COMPANY, P.A.**

Counsel for Plaintiff
355 Alhambra Circle, Suite 1100
Coral Gables, Florida 33134
Telephone: (786) 221-0600
Facsimile: (786) 221-0601
Email: mmoore@moore-and-co.com

_/s/ John Curtis_____
Michael T. Moore, Esquire
Florida Bar No. 207845
Johnlee S. Curtis, Esquire
Florida Bar N. 036944

<u>VERIFICATION</u>

JOHNLEE S. CURTIS, being duly sworn, deposes and says:

1. I am on of the attorneys for MARK E. LUTHER, PH.D., Plaintiff herein, and this AFFIDAVIT is made in that capacity.

2. I have discussed the foregoing Verified Complaint with my client who is only available by telephone and he has confirmed that the contents and allegations of the Verified Complaint are true, except as to those matters therein stated upon information and belief.

3. In view of exigent circumstances I make this Verification because my client is unable to execute the verification verifying the matters stated in the Verified Complaint.

4. The sources of my information and the grounds of my belief as to all matters stated in the Verified Complaint are based on the advice of my client.

_____
Johnlee S. Curtis, Esquire


STATE OF FLORIDA    )
                    )ss.
COUNTY OF MIAMI-DADE )

The foregoing instrument was acknowledged before me this 2nd day of November, 2009, by Johnlee S. Curtis who is <u>personally known to me</u> and who did take an oath.

_____
Notary Public, State of Florida



MONICA DELSOL-DIAZ
MY COMMISSION # DD894765
EXPIRES August 07, 2013
FloridaNotaryService.com
(407) 398-0153

Moore & Company, P.A., 355 Alhambra Circle, Suite 1100, Miami (Coral Gables), FL 33134